OPINION
{¶ 1} Plaintiff-appellant Lanny Snell appeals the decision of the Monroe County Common Pleas Court which granted summary judgment in favor of defendants-appellees Sharon Kilburn and Monroe County Coroner Jay Seidler. The first issue, regarding only the coroner, is whether appellant sufficiently pled a civil rights action under 42 U.S.C. 1983. The next issues, regarding only Ms. Kilburn, entail whether the court erred in ruling that she had statutory authority to consent to cremation of the body of Wayne Snell and whether the court erred in finding that only the coroner, not Ms. Kilburn, had a duty to notify and identify the next of kin. For the following reasons, the judgment of the trial court is affirmed.
 STATEMENT OF THE FACTS {¶ 2} Apparently, Wayne Snell had a long-time relationship with Rosa Mehler. Appellee Sharon Kilburn was the niece of Rosa Mehler and knew Wayne Snell for thirty-five years.
 {¶ 3} On February 7, 2003, Wayne Snell funded his prepaid cremation at the local funeral home in Woodsfield, Ohio. The cost was $1,200 and did not include a casket or a memorial service. Ms. Kilburn states that on February 10, Wayne Snell instructed her to carry out his plans for cremation.
 {¶ 4} In March 2003, Rosa Mehler died naming Wayne Snell as her executor and leaving him her entire estate. Wayne Snell had reciprocated by naming Rosa as the executor of his estate and his durable health care power of attorney. His alternate for both documents was Ms. Kilburn.
 {¶ 5} On May 17, 2003, after Wayne Snell failed to meet his neighbor as planned, the neighbor went next door to Ms. Kilburn's mother's house. He and Ms. Kilburn then called police to gain entry and check on Wayne. However, Wayne Snell [hereinafter the decedent] was immediately pronounced dead, at age seventy-two.
 {¶ 6} The deputy coroner, Raymond Williams, came to the scene to determine if an autopsy was required. After considering the scene, the decedent's age, and his medical problems, revealed through reading his prescription pill bottles and by asking Ms. Kilburn, an autopsy was found to be unnecessary. The deputy coroner asked Ms. Kilburn about the decedent's next of kin, and she advised that he had no children.
 {¶ 7} It was later revealed that the decedent in fact had a son, Lanny Snell, appellant herein. Ms. Kilburn testified in her deposition that she never knew the decedent had a child until hearing rumors after his cremation. The neighbor also advised the deputy coroner that the decedent had no children. The decedent had worked for the city water department and thus knew the police officers and emergency technicians who arrived at the scene. None of these people were aware that the decedent had a son.
 {¶ 8} The body was then released to the funeral home. The cause of death on the death certificate was said to be unknown. In following the instructions given to her by the decedent in February, Ms. Kilburn went to the funeral home and signed papers authorizing the decedent's cremation, which he had already funded. He was cremated on May 20, 2003.
 {¶ 9} In January 2004, appellant Lanny Snell filed a complaint in the Monroe County Common Pleas Court against Ms. Kilburn and the coroner. The complaint was entitled, "Theft of a Corpse." He alleged that the coroner violated his statutory duty by failing to ascertain the cause of death prior to disposing of the corpse. He then alleged that Ms. Kilburn knowingly and falsely stated to the coroner that the decedent had no children and that he was in bad health. He claimed that she deceived the coroner in order to cremate the decedent and receive the estate property from his and Rosa's estate as soon as possible. He also alleged that Ms. Kilburn and the coroner delivered the body to be cremated despite the fact that the body was his property. He concluded by stating that he was wrongfully denied notice of death, custody of the corpse, and the right to know the cause of death. He then stated that he suffered severe emotional distress. He sought $250,000 in compensatory damages from each plus $500,000 in punitive damages from Ms. Kilburn.
 {¶ 10} Ms. Kilburn answered by denying the claims and by claiming that only the personal representative of the decedent has standing to bring suit for unlawful possession of a corpse under R.C. 1713.39. The coroner answered by denying the claims and asserting statutory immunity.
 {¶ 11} In March 2004, Ms. Kilburn filed a motion for summary judgment. She again asserted that appellant lacked standing under R.C. 1713.39. She then stated that there was no allegation of extreme and outrageous conduct necessary for intentional infliction of emotional distress. Ms. Kilburn also noted that the coroner has a duty to notify the next of kin about a death under R.C. 313.14, not her. Next, she claimed that the decedent's cremation was statutorily authorized under R.C. 4717.22, dealing with ante-mortem cremation authorizations. Finally, she attached her affidavit which incorporated various exhibits. She stated that she did not know that the decedent had a child and that she was instructed by the decedent to ensure his cremation.
 {¶ 12} In June 2004, the coroner filed a motion for summary judgment. The coroner also mentioned the issue of standing. But, he mainly relied on statutory sovereign immunity under R.C.2744.02 and urged that none of the exceptions applied to make him liable in an official capacity. He noted that it did not appear that he was being sued in his individual capacity but that he would still be immune under R.C. 2744.03(A)(6). The coroner pointed out that appellant himself admitted in deposition that he was not surprised that no one knew about his existence.
 {¶ 13} Appellant filed memoranda in opposition to the two summary judgment motions. As to Ms. Kilburn's motion, appellant focused on the deputy coroner's mistaken belief that Ms. Kilburn was the decedent's long-time girlfriend. He also emphasized Ms. Kilburn's admission that she heard a rumor about a son. (Actually, her admission specifically stated that she did not hear this rumor until after the death and cremation). Appellant also made much of the fact that Ms. Kilburn was an alternate executor and health care power of attorney rather than the first choice.
 {¶ 14} As for her defense of statutory authorization to order cremation, appellant argued that the forms signed by the decedent to fund his cremation did not meet the antemortem cremation authorization required by R.C. 4717.22. He claimed the funeral director would testify that the decedent never returned to sign the proper documents; however, appellant failed to establish this by affidavit, deposition, or the like.
 {¶ 15} Appellant then responded to the coroner's motion for summary judgment. There, he stated that wrongful denial of a corpse sounds in both statutory violation and constitutional violation by way of a due process denial. He revealed that his claim was brought under 42 U.S.C. 1983 for a civil rights violation of his due process rights to his father's corpse, citing a Sixth Circuit case involving a county coroner removing corneas. He stated that the coroner violated three duties: to determine cause of death, to determine next of kin, and to release the corpse to the next of kin. He argued that the coroner's actions constituted more than negligence. He contended that the coroner admitted that he had no policies in place. (Actually, the coroner stated that because he had only been on the job for a week, his predecessor's policies were in place and he relied on the experience of the deputy coroner to apply those policies).
 {¶ 16} The coroner responded by pointing out that appellant failed to plead a claim under 42 U.S.C. 1983, urging that such claim can only be pled by alleging that the claimant was deprived of a federal constitutional right by one acting under color of state law. The coroner stated that he had no notice of the claim by the face of the complaint. He then argued that without allegations of section 1983 liability, he is immune under state statutory law.
 {¶ 17} Appellant countered that the case relied upon by the coroner to support his argument that the pleading was insufficient is a federal case which utilized the Federal Rules of Civil Procedure. He then pointed out that the Federal Rules require more than Ohio's mere notice pleading.
 {¶ 18} On September 24, 2004, the trial court granted summary judgment for both defendants. First, the court opined that appellant failed to set forth a claim for intentional infliction of emotional distress. Second, the court stated that Ms. Kilburn had no duty to notify the next of kin. Third, the court found that Ms. Kilburn had statutory authority to consent to cremation under Chapter 4717, also concluding that performance of an action one is legally entitled to perform precludes liability for intentional infliction of emotional distress. Fourth, the court held that appellant failed to plead a claim involving42 U.S.C. 1983 as he failed to allege that he was deprived of a federal right under color of state law. Fifth, the court determined that the coroner was immune from the state claims. Finally, the court advised that it was not necessary to rule on the standing issue. Appellant filed timely notice of appeal.
 ASSIGNMENT OF ERROR NUMBER ONE {¶ 19} Appellant's first assignment of error provides:
 {¶ 20} "THE COURT BELOW ERRED AS A MATTER OF LAW, BY DISMISSING PLAINTIFF'S ACTION FOR FAILURE TO CITE THE CONSTITUTION OR THE FEDERAL CODE."
 {¶ 21} Initially, we note that appellant does not take issue with the trial court's decision on immunity under state law. The only issue on appeal regarding the coroner's liability deals only with appellant's alleged federal civil rights claim. We also note that any federal immunity was never ruled upon because the coroner was not aware of this allegation when moving for summary judgment.
 {¶ 22} We must determine whether appellant's complaint sufficiently pled a civil rights action under 42 U.S.C. 1983 in order to withstand the coroner's summary judgment motion which claimed immunity from the state law claims. Specifically,42 U.S.C. 1983 provides in part:
 {¶ 23} "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress * * *."
 {¶ 24} Pursuant to Civ.R. 8(A), a pleading that sets forth a claim for relief shall contain (1) a short and plain statement of the claim showing that the party is entitled to relief, and (2) a demand for judgment for the relief to which the party claims to be entitled. Such Ohio rule encompasses what is known as notice pleading.
 {¶ 25} In responding to appellant's claim that summary judgment is improper because he still has a federal civil rights claim, the coroner urged that appellant never pled a civil rights claim. As aforementioned, the coroner cited a federal case requiring the plaintiff to plead that he was deprived of a federal right and that the one who deprived him acted under color of state law. Appellant replied that the Federal Rules of Civil Procedure require more than Ohio's mere notice pleading.
 {¶ 26} However, Ohio courts also consistently hold that a complaint alleging an action under 42 U.S.C. 1983 must meet two requirements: (1) there must be an allegation that the conduct in question was performed by a person acting under color of state law; and (2) the complaint must sufficiently allege that the conduct deprived the plaintiff of a federal right. Cooperman v.University Surgical Assoc., Inc. (1987), 32 Ohio St.3d 191, 199. See, also, Schwarz v. Board of Trustees of OSU (1987),31 Ohio St.3d 267, 272; Mullins v. Griffin (1991), 78 Ohio App.3d 84,87 (10th Dist.).
 {¶ 27} Thus, a plaintiff who is asserting a federal civil rights action under 42 U.S.C. 1983 usually states, for instance, that the defendant acted under color of state law and violated the Fourteenth Amendment by depriving plaintiff of property without due process. See St. Clair Corp. v. Cleveland (1990),49 Ohio St.3d 33, 34, 36 (noting that the actionable violation of the Fourteenth Amendment is not the deprivation of a property interest per se but the deprivation without due process and also requiring the plaintiff to allege that state remedies are inadequate).
 {¶ 28} Here, appellant's complaint did not cite42 U.S.C. 1983, any part of the constitution, or any federal statutory right. Contrary to appellant's argument, we are not saying that he was required to cite specific laws; however, such cites could help cure any pleading problem. This problem being that thecomplaint did not even generally allege the deprivation of afederal right. There was no mention of due process or constitutional procedural failings.
 {¶ 29} The complaint did not place the coroner on notice of the claim showing entitlement to relief as per Civ.R. 8(A). The complaint only placed the coroner on notice that there were state law claims against him. Consequently, the coroner only moved for summary judgment on state immunity grounds. Appellant cannot avoid the within summary judgment by raising for the first time in his response potential liability under the federal statute of42 U.S.C. 1983, which has different immunity standards. As such, the trial court did not err in deciding that appellant failed to plead an action under 42 U.S.C. 1983.
 {¶ 30} Appellant urges in the alternative that the trial court should have allowed him to amend his complaint under Civ.R. 15(A). This rule states that a complaint can only be amended after the answer is filed with leave of court or written consent of the opponent. The rule does state that leave shall be freely given when justice so requires. However, appellant never sought leave to amend.
 {¶ 31} Appellant was required to seek leave to amend the complaint by written motion or orally at a hearing. See Tullohv. Goodyear Atomic Corp. (1994), 93 Ohio App.3d 740, 758 (4th Dist.), citing Civ.R. 7(B); Civ.R. 15(A); Studier v. Taliak
(1991), 74 Ohio App.3d 512, 515-516. Because appellant never sought leave to amend, he waived the argument that the he was entitled to amendment. Tulloh, 93 Ohio App.3d at 758.
 {¶ 32} Where a request for leave to amend was not presented to the trial court, there is nothing for the appellate court to review regarding amendment. Coulter Pontiac v. Pontiac MotorDiv. (1981), 4 Ohio App.3d 169, 172 (7th Dist.). Consequently, it was not error for the court to fail to sua sponte amend the complaint to allege a federal civil rights claim. This assignment of error is overruled, and summary judgment in favor of the coroner is upheld.
 ASSIGNMENT OF ERROR NUMBER TWO {¶ 33} Appellant's second assignment of error, which deals only with Ms. Kilburn, contends:
 {¶ 34} "THE COURT BELOW ERRED AS A MATTER OF LAW, BY RULING THAT DEFENDANT KILBURN HAD STATUTORY AUTHORITY TO CONSENT TO THE CREMATION OF WAYNE SNELL'S BODY."
 {¶ 35} Ms. Kilburn argued in her summary judgment motion that she was statutorily authorized to consent to cremation under R.C.4717.22(A)(2) because the decedent had an antemortem cremation authorization form and/or under (A)(3) because she was the executor following the decedent's written instructions. The trial court granted summary judgment in her favor agreeing that she was statutorily authorized to consent to cremation.
 {¶ 36} R.C. 4717.21(A) provides that a person may authorize his own cremation before his death and may specify the arrangements for the final disposition of his cremated remains by executing an antemortem cremation authorization form signed by one witness. The original of this form shall be sent to the crematory operator and a copy shall be retained by the person. Id. The form shall specify the final disposition that is to be made of the cremated remains. R.C. 4717.21(B).
 {¶ 37} A crematory in possession of the executed form, the decedent's body, and payment or assurance thereof shall cremate the decedent and dispose of the remains in accordance with the instructions unless a person entitled to act as the authorizing agent for cremation under R.C. 4717.22(A)(1) or (A)(4) through (A)(8) modifies the arrangements in writing or cancels the cremation. R.C. 4717.21(C). See, also, R.C. 4717.21(D).
 {¶ 38} Thereafter, R.C. 4717.22(A) lists nine categories of "authorizing agents" representing those who may order the cremation of a decedent. The list is in descending priority and provides in pertinent part:
 {¶ 39} "(1) The spouse of the decedent at the time of the decedent's death;
 {¶ 40} "(2) Any person acting on the instructions of a decedent who authorized the decedent's own cremation by executing an antemortem cremation authorization form in accordance with section 4717.21 of the Revised Code;
 {¶ 41} "(3) A person serving as the executor or legal representative of the decedent's estate who is acting in accordance with the decedent's written instructions for the final disposition of the decedent's body;
 {¶ 42} "(4) The decedent's surviving adult children * * * [if] none of them have expressed an objection to the cremation * * *."
 {¶ 43} As aforementioned, appellee Kilburn argues that she was authorized to consent to cremation under both R.C.4717.22(A)(2) and (3). We shall start with the second type of authorized agent. In order for appellee Kilburn to fit under this category, the decedent must have authorized his own cremation by executing an antermortem cremation authorization form in accordance with R.C. 4717.21. The most important statutory requirements are authorization of the cremation signed by the decedent and one witness. Other elements include specifying the final disposition of the cremated remains and sending the original copy to the crematory.
 {¶ 44} Here, appellee Kilburn incorporated various documents into the affidavit attached to her summary judgment motion. To support her contention of an antemortem cremation authorization form she included four documents as exhibit B. The first document is an insurance enrollment form with a $1,200 one-time premium to fund $1,200 worth of services by the funeral home. This form was signed on February 7, 2003 by the decedent and the insurance agent/funeral home director.
 {¶ 45} The next form is an irrevocable assignment of ownership of the policy to the funeral home. It was signed on February 7, 2003 by the decedent and the funeral home director. There is no mention of cremation in the first two documents.
 {¶ 46} The third document is entitled, "Guaranteed Funeral Goods and Services," and is signed by only the funeral director. This form establishes a price of $1,200, lists cremation as the disposition, rules out a casket, provides a cremation container, and provides for transportation to the crematory. The decedent is listed as the funeral recipient; however, his signature does not appear on this form.
 {¶ 47} The above three described documents were all provided by the insurance company. They establish that a copy is sent to the insurer, a copy is kept by the funeral home, and a copy is given to the person. There is no indication that the crematory received a copy.
 {¶ 48} The fourth document is on funeral home letterhead and appears to constitute a receipt for payment of $1,200 by the decedent for cremation, cremation container, transportation to the crematory, and professional services for cremation. It is signed by the funeral director, but is not signed by the decedent.
 {¶ 49} Individually, none of these documents meet the requirements for an antemortem cremation authorization form. Most importantly, none of the documents contain both a witnessed signature and a cremation request on the same page. One could argue that the first three documents could be read collectively since they appear to be one packet provided by the insurer and presented to the decedent simultaneously as one item. Collectively, the most important elements of a witnessed signature and request for cremation would then exist. Still, the statutorily required element of providing a copy to the crematory is not clearly satisfied unless the funeral home is found to be the crematory's agent since they are responsible for arranging the cremation. Also, the element of specifying the final disposition of the cremated remains is questionable since the documents only state to place them in the purchased urn without saying where they will actually go. In any event, appellant's actions can be authorized under the next statutory provision.
 {¶ 50} As set forth above, R.C. 4717.22(A)(3) provides that after the spouse and a person acting under an antemortem authorization, the next person in line of priority to order cremation is: "[a] person serving as the executor or legal representative of the decedent's estate who is acting in accordance with the decedent's written instructions for the final disposition of the decedent's body." R.C. 4717.22(A)(3).
 {¶ 51} Appellee Kilburn was the executor of the decedent's estate. She incorporated letters of appointment into her affidavit attached to her summary judgment motion. These letters establish that she was given authority to administer the decedent's estate on May 30, 2003.
 {¶ 52} In response, appellant first makes much of the fact that appellee Kilburn's aunt was named the executor and appellee Kilburn was only named the alternate or successor executor. However, this distinction is irrelevant where appellee Kilburn's aunt predeceased the decedent.
 {¶ 53} We next move to the issue of whether there were written instructions for cremation. Appellee Kilburn states that she was given verbal instructions by the decedent on February 10, 2003 to follow the written instructions for cremation he left at the funeral home three days before. Regardless of whether the documents held by the funeral home can be categorized as a statutory antemortem cremation authorization, the documents can be categorized as written instructions under R.C. 4717.22(A)(3). Such instructions need not be executed with a witness in the manner required by R.C. 4717.21 and 4717.22(A)(2). Nor must a copy be sent to the crematory or disposition of the cremated remains be specified. Thus, written instructions existed.
 {¶ 54} Appellant then contends that appellee Kilburn was not "serving as the executor" on May 17, 2003, the day she ordered cremation, because she was not given her letters by the probate court until May 30. Pursuant to R.C. 2109.02, letters of appointment are required prior to execution of the estate and no act or transaction by a fiduciary is valid prior to issuance of these letters. However, this same statute then expressly statesthat its provisions do not prevent an executor named in a willfrom paying funeral expenses or prevent necessary acts for thepreservation of the estate prior to the issuance of letters.
 {¶ 55} R.C. 4717.22(A)(3) authorizes a "person serving as executor." It does not specify or limit the authorization to a person who has received letters of administration. R.C. 2109.02
contemplates that the named executor can act as the appointed executor when dealing with death arrangements and expenses, even before the letters are issued. Having a body to be cremated sit in cold storage waiting for the letters from the probate court would not preserve the estate.
 {¶ 56} Still, appellant contends that appellee did not know she was the executor at the time so she could not now be considered to have been serving as the executor. However, his brief fails to cite this court to the portion of the record where this fact is apparent. See Appellant's Brief at 6. See, also, App. R. 16(A)(7).
 {¶ 57} In any event, liability is not established merely because someone who was statutorily authorized to act did not know exactly why they were so authorized. If one believes they are authorized due to an antemortem authorization, but it turns out there is a stronger statutory reason for their authorization, their act is not invalid.
 {¶ 58} Appellee believed she was authorized. Her belief was instilled by the decedent and later reinforced by the funeral home and even by the crematory. If it turns out that the funeral home was wrong in releasing the body based upon an antemortem cremation authorization, there is no reason why appellee cannot fall back upon the next valid authorization if she happens to fit that category. If she had later discovered she was the decedent's child, would she then be liable to her siblings because she did not know she was his child at the time of cremation?
 {¶ 59} Furthermore, we point out that the same funeral home that sold the decedent the prepaid funeral insurance for cremation a few months before allowed appellee to order cremation of the body they held even in the absence of an exact statutory antemortem authorization or letters of appointment. This funeral home is also the county holding facility for dead bodies as the county has no morgue. There is no evidence that she lied about her status to any person to obtain release of the body. Appellant does not clearly establish how an individual's belief that they are authorized to order cremation is actionable where that person was permitted to order cremation by the authority holding the body who assisted the decedent in funding his own cremation. Finally, we point to the next assignment of error, which reveals an important trial court holding that appellant failed to contest on appeal and which also holds that she was not shown to have a notification duty.
 ASSIGNMENT OF ERROR NUMBER THREE {¶ 60} Appellant's third and final assignment of error deals only with appellee Kilburn and provides as follows:
 {¶ 61} "THE COURT BELOW ERRED AS A MATTER OF LAW, BY DISMISSING THE CAUSE OF ACTION AGAINST SHARON KILBURN BASED UPON THE STATUTORY DUTY OF THE CORONER."
 {¶ 62} The court granted summary judgment for appellee Kilburn for many reasons. For example, the court found that she could not be liable for cremation because she was statutorily authorized, as analyzed in the prior assignment of error. Moreover, appellee Kilburn's summary judgment motion claimed that there was no genuine issue of material fact as to appellant's claim of intentional infliction of emotional distress. She claimed there was no intent and that there were no allegationsof extreme and outrageous conduct beyond all bounds of decency.
Appellant did not respond to this assertion. The trial court's very first holding agreed that appellant failed to set forth a claim for intentional infliction of emotional distress under the Supreme Court's holding in Yeager v. Local Union 20 (1983),6 Ohio St.3d 369. Appellant did not contest this holding on appeal. Rather, he focused above on the trial court's alternative holding that one cannot be liable for intentional infliction of emotional distress for performing an act which she was legally entitled to perform.
 {¶ 63} This assignment of error deals with the portion of the trial court's opinion that the coroner has the duty to notify next of kin and thus there is no cause of action against Ms. Kilburn for failing to notify appellant of his father's death. Appellant acknowledges that the coroner has the duty to identify and notify next of kin. However, he claims that this does not shield appellee Kilburn from her act of telling the deputy coroner that the decedent had no children.
 {¶ 64} R.C. 313.14 provides in pertinent part:
 {¶ 65} "The coroner shall notify any known relatives of a deceased person who meets death in the manner described by section 313.12 of the Revised Code by letter or otherwise. The next of kin, other relatives, or friends of the deceased person, in the order named, shall have prior right as to disposition of the body of such deceased person. If relatives of the deceased are unknown, the coroner shall make a diligent effort to ascertain the next of kin, other relatives, or friends of the deceased person."
 {¶ 66} R.C. 313.12, referred to above, provides:
 {¶ 67} "(A) When any person dies as a result of criminal or other violent means, by casualty, by suicide, or in any suspicious or unusual manner, when any person, including a child under two years of age, dies suddenly when in apparent good health, or when any mentally retarded person or developmentally disabled person dies regardless of the circumstances, the physician called in attendance, or any member of an ambulance service, emergency squad, or law enforcement agency who obtains knowledge thereof arising from the person's duties, shall immediately notify the office of the coroner of the known facts concerning the time, place, manner, and circumstances of the death, and any other information that is required pursuant to sections 313.01 to 313.22 of the Revised Code. In such cases, if a request is made for cremation, the funeral director called in attendance shall immediately notify the coroner."
 {¶ 68} Initially, we note that appellant states that the coroner should not have relied on appellee Kilburn's statement. And, he acknowledged in deposition that he was not surprised that no one in that generation knew the decedent had a child. Appellee Kilburn claims that in the thirty-five years she knew the decedent, she never knew he had a child. Yet, any genuine issue as to her intent or knowledge has not been shown to be relevant to the crux of the issue.
 {¶ 69} As the trial court held, if any duty of identification and notification of next of kin arose, it was statutorily placed upon the coroner rather than appellee Kilburn. Appellant did not establish any genuine issue of material fact regarding how such tasks could have been appellee Kilburn's duty prior to cremation. In either case, R.C. 313.14 does not place upon the coroner the duty to notify next of kin where the death was not under the circumstances described in R.C. 313.12.
 {¶ 70} Appellant claims the decedent was relatively young and healthy; however, the decedent was a seventy-two year old male whom the coroner determined to be suffering from conditions such as diabetes and hypertension. Contrary to appellant's complaint that appellee Kilburn falsely told the coroner that the decedent was in poor health, the only evidence at the summary judgment stage consisted of the deputy coroner stating that he received his medical information about the decedent's poor health from the various prescription bottles taken by the decedent daily. The trial court did not err in holding that appellee Kilburn had no duty to notify next of kin prior to cremation.
 {¶ 71} Appellant then urges that the trial court should not have used appellee's lack of duty to notify next of kin as a shield for her actual lies. He claims that appellee Kilburn should be liable because she committed fraud when she told the deputy the decedent had no children. However, fraud must be pled with specificity. Civ. R. 9(B).
 {¶ 72} We also note that fraud is not legally defined as misstating facts. Fraud has various elements: (1) a representation (or concealment of a fact when there is a duty to disclose); (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or utter disregard and recklessness as to whether it is true or false that knowledge may be inferred; (4) with intent of misleading another into relying upon it; (5) justifiable reliance; and (6) resulting injury proximately caused by the reliance. Burr v. Board of Cty.Commrs. of Stark Cty. (1986), 23 Ohio St.3d 69, 73.
 {¶ 73} The representation at issue was made by various individuals at the scene of death, including appellee Kilburn. There was no transaction at hand when she answered the deputy coroner's question at the scene of death. Although there may be issues as to knowledge and intent, appellant did not rely on her statement to his detriment. The statement was not even made to the complainant here.
 {¶ 74} The movant met her initial burden to establish that she had no duty that could be alleged to be breached at the moment of her statement to the deputy coroner in regards to any claims of negligence. Appellant does not meet his reciprocal burden to establish a genuine issue of material fact concerning appellee Kilburn's purported duty surrounding her representation that the decedent had no children.
 {¶ 75} In fact, his response to appellee Kilburn's motion for summary judgment complains about the coroner's actions and merely blames appellee Kilburn for contributing to the coroner's mistakes as a "nothing more than a passerby." Other than repeatedly stating that appellee Kilburn is an "officious busybody" and "interloper," he makes no relevant claims as to her duty to him.
 {¶ 76} Appellant's complaint combined with his responses to the summary judgment motions make for a confusing conglomeration of allegations. His complaint begins with only one title, "Theft of a Corpse." Yet, the complaint concludes by implying that his claims revolve around the tort of intentional infliction of emotional distress, the rejection of which he does not appeal on one of the two alternative grounds.
 {¶ 77} Additionally, appellant's response to appellee Kilburn's motion for summary judgment announces, "The purpose of the complaint is not an action for wrongful cremation. The complaint is an action for wrongful detention of a corpse." This acts to further muddy the water. If the action is unrelated to wrongful cremation, then his arguments under the second assignment of error would seemingly be inapplicable.
 {¶ 78} We also note appellee's argument that appellant lacked standing because he was not the personal representative of the estate, which the trial court did not find it necessary to rule on. She cited R.C. 1713.39, which provides that one with unlawful possession of a body is jointly and severally liable to others that have had unlawful possession in a sum not less than five hundred nor more than five thousand dollars to be recovered at the suit of the personal representative of the deceased for the benefit of the next of kin. If the action is not for wrongful cremation, but is only for wrongful detention, then there is no reason why this statute would not apply here. Returning to the substance of the assignment, we conclude that appellee had no duty at the time of death to assist the coroner in determining next of kin.
 {¶ 79} For the foregoing reasons, the judgment of the trial court is hereby affirmed.
Donofrio, P.J., concurs.
Waite, J., concurs.